**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| **TEAMSTERS LOCAL 251 HEALTH,** : | |
| **SERVICES AND INSURANCE PLAN,** : | |
| **By and through its TRUSTEES, and** : | |
| **TAMMY BEAUDREAULT, in her capacity** : | |
| **as Administrator of Local 251 HSIP,** : | |
| : | |
| *Plaintiffs*, : | |
| : | |
| v. : | **C.A. No. 1:20-cv-00298-MSM-PAS** |
| : | |
| : | |
| **R.P. IANNUCCILLO & SONS** : | |
| **CONSTRUCTION CO.,** : | |
| : | |
| *Defendant*. : | |
| : | |

## PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Teamsters Local 251 Health Services and Insurance Plan ("HSIP" or "Fund") and Tammy Beaudreault, in her capacity as Administrator of Local 251 HSIP hereby move for summary judgment against R.P. Iannuccillo & Sons Construction Co. ("RPI") on Count I. The undisputed facts prove that the Fund is entitled to judgment as a matter of law on Count I because Defendant failed to make contributions to Plaintiff, a multi-employer health plan, as obligated by the terms of the parties' collective bargaining agreement and Trust Agreement.

1

Respectfully submitted,

**TEAMSTERS LOCAL 251 HEALTH SERVICES AND INSURANCE PLAN AND TAMMY BEAULDREAULT**

By their attorney,


/s/ Elizabeth Wiens_____
Elizabeth Wiens
GURSKY|WIENS Attorneys at Law, Ltd.
1130 Ten Rod Road, Suite C-207
North Kingstown, RI 02852
Tel: (401) 294-4700
Fax: (401) 294-4702
ewiens@rilaborlaw.com


## CERTIFICATION

The undersigned hereby certifies that on this 11th day of August, 2022, this document was filed electronically and is available for review and downloading via ECF by all registered counsel of record.


_____*/s/ Janine Durand*_____
Janine Durand

# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **TEAMSTERS LOCAL 251 HEALTH,** : | |
| **SERVICES AND INSURANCE PLAN,** : | |
| **By and through its TRUSTEES, and** : | |
| **TAMMY BEAUDREAULT, in her capacity** : | |
| **as Administrator of Local 251 HSIP,** : | |
| : | |
| *Plaintiffs*, : | |
| : | |
| **v.** : | C.A. No. 1:20-cv-00298-MSM-PAS |
| : | |
| : | |
| **R.P. IANNUCCILLO & SONS** : | |
| **CONSTRUCTION CO.,** : | |
| : | |
| *Defendant.* : | |
| : | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, this Court should grant summary judgment on Count I because there is no genuine issue of material fact, and the Plaintiffs are entitled to judgment as a matter of law. As discussed below, it is undisputed that Defendant was obligated to make payments to the Fund pursuant to the terms of a collective bargaining agreement, and that Defendant failed to make such payments.

## INTRODUCTION

Plaintiff Teamsters Local 251 Health Services and Insurance Plan ("HSIP") is a multiemployer welfare benefit plan within the meaning of ERISA, 29 U.S.C. §§ 1002(1) and (37). HSIP provides medical, prescription drug, dental and other benefits to International Brotherhood of Teamsters Local 251 ("Union") members and their dependents, including former-member Kayne Medeiros ("Medeiros").

Benefits are financed primarily by employer contributions, rates for which are set by collective bargaining agreements between the Union and employers or employer associations. R.P. Iannuccillo & Sons Construction Co. ("RPI") is a member of the Construction Industries of Rhode Island ("CIRI"), which is an employer association that is party to a collective bargaining agreement with the Union ("CBA"). RPI failed to make required contributions to HSIP after Medeiros was disabled following a recurrence of an on-the-job injury suffered while working for RPI.

The HSIP Board of Trustees ("Trustees") has broad discretion to enforce the term of the Trust Agreement, which requires the timely submission of contributions by employers.  After a review of all pertinent facts, the Trustees determined that RPI failed to make contributions to the Fund as required by the provisions of the CBA. Because the Trustees' interpretation of the CBA is not arbitrary or capricious, their interpretation is entitled to deference from this Court.

Further, even if this Court were to review the CBA and relevant plan documents *de novo*, the Court should interpret the CBA to require RPI to submit contributions on behalf of Mr. Medeiros for the one-year period following the recurrence of his injury.

## STANDARD OF REVIEW

Summary judgment is appropriate when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A *material* fact is a fact that has the potential to change the outcome of the lawsuit. *Navvarro v. Pfizer Corp.*, 261 F.3d 90, 93-4 (1st Cir. 2001). A genuine dispute as to a material fact exists only when resolution of the dispute in favor of the non-movant has the potential to change the outcome of the case. *Id*.  "Once the moving party avers the absence of genuine issues of material facts, the non-movant must show, through materials of evidentiary quality that such a dispute exists." *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 66 (1st Cir. 2004).

Although this Court must view the facts and inferences in the light most favorable to the non-movant, the non-movant cannot rely on its subjective interpretation of the facts, but must point to *reliable*, *competent* evidence that tends to establish a dispute as to a material fact. *Continental Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991); *Torrech-Hernandez v. General Electric Corp.*, 519 F.3d 41, 47 n.1 (1st Cir. 2008). When "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986) (internal quotations omitted). The non-movant must present evidence that is *sufficiently probative* rather than merely colorable. *Cadle Co. v. Hayes,* 116 F.3d 957, 960, 962 (1st Cir. 1997). The Court cannot give probative weight to "conclusory allegations, improbable inferences, [or] unsupported speculation." *C.K. Smith & Co., Inc. v. Motiva Enterprises LLC,* 269 F.3d 70, 73 (1st Cir. 2001) (quoting *Medina-Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir. 1990).

## ARGUMENT

Summary judgment is warranted here because the pleadings, admissions, and documentary evidence all show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c). Further, Plaintiffs are entitled to judgment as a matter of law, "since there is no legally sufficient evidentiary basis for a reasonable jury to find for the Defendant." Fed.R.Civ.P. 50.

## I.    SUMMARY OF UNDISPUTED FACTS

In accordance with Local Rule 56, HSIP has submitted a Statement of Undisputed Facts ("SUF"). The pertinent facts are summarized herein.

HSIP is a multiemployer welfare benefit plan within the meaning of ERISA, 29 U.S.C. §§ 1002(1) and (37). SUF ¶ 1. HSIP provides medical, prescription drug, dental and other benefits to International Brotherhood of Teamsters Local 251 members and their dependents. Benefits are

financed primarily by employer contributions, rates for which are set by collective bargaining agreements between the Union and employers or employer associations. SUF ¶ 3. HSIP is governed by the Board of Trustees, which is comprised of an equal number of both Union and Employer Trustees. SUF ¶ 4.

RPI is a corporation organized under the laws of the State of Rhode Island and an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. § 1002(5). SUF ¶ 5. RPI is also a member employer of CIRI and is bound by the terms of the 2017 and 2020 Heavy Highway Construction Agreements between CIRI and the Union ("CBAs"). SUF ¶ 6. Under Article XXI of the CBAs, RPI must remit contributions to HSIP for covered hours worked:

> the Employer agrees to make payments to the Teamsters' Local Union No. 251 Health Services and Insurance Plan for each and every employee performing work within the scope of and/or covered by this Collective Bargaining Agreement, whether such employee is a regular, probationary, temporary, or casual employer, irrespective of his status as a member or non-member of the Local Union from the first hour of employment subject to this Collective Bargaining Agreement

SUF ¶ 7. RPI must also make contributions for employees who are injured while on the job:

> If an employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work, provided however, such contributions shall be forty (40) hours per week and shall not be paid for a period of more than twelve (12) months.

SUF ¶ 8.

Additionally, the CBAs require that the Union and Employer ratify all actions taken by the Trustees with respect to the administration of the Plan within the scope of their authority, including employer contributions:

> The Employers and Union which are signator hereto ratify the designation of the Employer and the Employee Trustees under such Agreement, and ratify all actions already taken, or to be taken by such Trustees within the scope of their authority.

SUF ¶ 10.

6

The scope of the Trustees' authority is defined by the Restated Agreement and Declaration of Trust for Teamsters Local 251 Health Services and Insurance Plan ("Trust Agreement"). SUF ¶ 11. Under Sections 13.10 of the Trust Agreement, "all determinations of the Trustees shall be final and binding. The Trustees shall have the full authority and discretion to interpret this Agreement and any rules, regulations, policies or provisions thereunder. SUF ¶ 13.

Section 5.4 of the Trust Agreement addresses employer contributions, providing in pertinent part:

> The failure of an Employer to pay the contributions required hereunder promptly when due shall be a violation of the collective bargaining agreement between the said Employer and the Union as well as a violation of the Employer's obligation hereunder. Nonpayment by an Employer shall not relieve any other Employer of his obligations to make payments. In addition to any other remedies to which the parties may be entitled, an Employer in default for ten working days may be required at the discretion of the Trustees to pay such reasonable rate of interest as the Trustees may fix on the monies due to the Trustees from the date payment was due to the date when payment is made, together with all expenses of collection incurred by the Trustees, including attorney's fees. The Trustees may take any action necessary to enforce payment of the contributions due hereunder, including, but not limited to, proceedings at law and equity and arbitration and any remedies which would generally be available under the collective bargaining agreements.

SUF ¶ 12.

On August 8, 2019, Kayne Medeiros ("Medeiros") suffered a knee injury while on the job as an employee of RPI. SUF ¶ 14. Due to the injury, Medeiros was unable to work from August 9, 2019 to December 30, 2019. SUF ¶ 15. During that time, RPI made the appropriate contributions on behalf of Medeiros as required by the CBA. SUF ¶ 16.

On December 31, 2019, Medeiros resumed work with a new employer, Petroleum Heat and Power Company ("Petro"). SUF ¶ 17. On February 4, 2020, while on the job at Petro, Medeiros suffered a recurrence of the same knee injury he sustained while an employee of RPI.  SUF ¶ 18. On February 7, 2020, RPI's insurance company, Beacon Mutual Insurance Company, executed a

Memorandum of Agreement that classified Medeiros' injury as a recurrence and subsequently reinstated Medeiros' worker's compensation benefits payments. SUF ¶ 19. However, after the recurrence of Medeiros' injury, RPI did not resume contributions to HSIP. SUF ¶ 20.

On March 19, 2020, the Trustees determined that RPI was responsible for contributions owed on behalf of Medeiros beginning on February 4, 2020. SUF ¶ 21. On April 29, 2020, HSIP's counsel sent a letter to RPI demanding that RPI submit contributions owed to HSIP on behalf of Medeiros for the period of disability resulting from the recurrence. SUF ¶ 22.

On May 6, 2020, RPI's President, Bruce Iannuccillo, sent a letter to the Trustees rejecting HSIP's demand for contributions, disagreeing with the Trustees' decision on the basis that Medeiros was not an employee of RPI at the time of the recurrence. He further stated that he deferred to the Trustees to "interpret the CBA and to correctly redirect benefit indemnification to PETRO." SUF ¶ 23. On June 19, 2020, RPI's counsel sent a letter to HSIP's counsel denying RPI's obligation to make contributions on behalf of Medeiros, alleging that "there is no information which even evidences that the subsequent injury to Mr. Medeiros's knee was, in fact, work related." SUF ¶ 24.

Ultimately, Mr. Medeiros was unable to work due to his work-related injury and collected workers' compensation benefits from RPI for the period February 4, 2020 until the date of his death on March 10, 2021.[1] SUF ¶ 25. As a result of his injury, Medeiros was unable to work a total of 1,854 hours during the period of February 4, 2020 to February 4, 2021. SUF ¶ 27.

The CBAs set the required hourly contribution rate:

a.    From August 1, 2019, $12.6125 per hour, maximum forty (40) hours per week, but not more than $504.50 per week.

---

[1] The cause of Mr. Medeiros' death was not work-related.

b.  From August 1, 2020, $12.9125 per hour, maximum forty (40) hours per week, but not more than $516.50 per week.

SUF ¶ 26. Accordingly, RPI owes total contributions to HSIP of $23,651.18 on behalf of Medeiros for the twelve-month period following the recurrence of his injury on February 4, 2020. SUF ¶28.

The Teamsters Local 251 Health Services & Insurance Plan Employer Delinquency, Collection & Audit Procedures ("Delinquency Policy") provides the processes by which the Fund may fulfill its obligation to "collect contributions as they are due and to make such diligent and systematic collection efforts as are appropriate under the circumstances." SUF ¶ 29. Section C.1 of the Delinquency Policy requires that "Remittance reports and contributions thereon are due on the tenth (10th) calendar day of the month immediately following the month in which hours are worked or accrue pursuant to the applicable collective bargaining agreement." SUF ¶ 30. The Fund provides a copy of this policy to each signatory employer.  SUF ¶ 30.

If an Employer fails to submit remittance reports and payment after receiving written notification according to the terms of the Delinquency Policy, the Fund may assess monthly interest on the outstanding amount at a rate of 1.5% or one hundred dollars ($100), whichever is greater. The Fund may also seek all delinquent contributions, late charges, interest, liquidated damages, accountant's fees for the cost of any audit begun after a lawsuit, and all attorneys' fees and costs incurred during the collection efforts. SUF ¶ 32. The Delinquency Policy allows for statutory liquidated damages equal to twenty percent (20%) of unpaid contributions. SUF ¶ 33. From February 4, 2020 through February 4, 2021, RPI has accrued the following interest and penalties under the terms of the Delinquency Policy as of August 10, 2022:

c.  Interest:                    $8,657.88

d.  Statutory Damages (20%):    $4,730.24

SUF ¶ 34.

## II.    RPI FAILED TO MAKE CONTRIBUTIONS TO A MULTIEMPLOYER PLAN IN ACCORDANCE WITH THE CBA

RPI failed to pay contributions to HSIP as required by the collective bargaining agreement between CIRI and Local 251 in violation of 29 U.S.C.A. § 1145, which states that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

This Court has adopted a straightforward test for assessing Section 1145 claims brought by a multiemployer plan to enforce delinquent contributions by an employer. *See International Union of Painters & Allied Trades, District Council No. 11 v. Keith Robinson Painting, Inc.*, 2005 WL 3591992, at *3 (D.R.I., 2005). To prevail on its Section 1145 claim, HSIP must establish (1) that it is a multiemployer plan within the definition of ERISA, 29 U.S.C. § 1002(37)(A), (2) that Defendant is an employer obligated to pay contributions under the terms of the plan, and (3) that Defendant failed to pay contributions under the terms of the plan. *New York State Teamsters Conference Pension & Retirement Fund v. Syracuse Movers, Inc.*, No. 5:02-CV-00733(NPM), 2004 WL 2931663 (N.D.N.Y. Nov. 22, 2004).

It is undisputed that HSIP is a multiemployer plan within the meaning of ERISA, 29 U.S.C. § 1002(37)(A), and that RPI is an employer obligated to make contributions under the terms of the CBA. SUF ¶¶ 1, 5-6. RPI also failed to pay contributions under Article XXI of the CBA, which provides that:

> If an employee is injured on the job, the Employer shall continue to pay the required contributions until such employee returns to work, provided however, such contributions shall be forty (40) hours per week and shall not be paid for a period of more than twelve (12) months.

The evidence shows that RPI has continuously refused to fulfill its obligations to make payments to HSIP on behalf of Medeiros for the recurrence of his on-the-job knee injury. SUF ¶¶ 23-24. Medeiros was unable to work due to the same injury for which RPI paid the required contributions from August 8 to December 30, 2019, yet it did not resume payments for the subsequent period of disability. SUF ¶¶ 20.

Courts have construed Section 1145 as limiting the defenses available to an employer in suits by an employee benefit plan for unpaid contributions. *See Massachusetts Laborers' Health and Welfare Fund v. Explosives Engineering, Inc.*, 136 F.R.D. 24, 26. Courts have generally recognized three such defenses: (1) the contributions are illegal, (2) the collective bargaining agreement is void (not voidable), and (3) the employees have voted to decertify the union as its bargaining representative. *See generally Agathos v. Starlite Motel*, 977 F.2d 1500, 1505 (3d Cir.1992).

RPI has not raised any of the recognized defenses, as none would apply in this case. RPI simply disagrees with the Trustee's determination that it owed contributions on behalf of Medeiros, even though Medeiros was not an employee of RPI at the time of his second period of disability. SUF ¶ 23. However, the record shows that Medeiros' initial injury occurred while on the job as an employee of RPI, and he then suffered a recurrence of that same injury while working at Petro. SUF ¶¶ 14-18. As such, the Trustees made the reasonable determination that RPI was responsible for Medeiros' health coverage during his period of disability. SUF ¶ 21.

Accordingly, HSIP has met its burden of proof to prevail on its Section 1145 claim and is therefore entitled to judgment as a matter of law.

III.    **THE TRUSTEES' DETERMINATION THAT RPI OWED CONTRIBUTIONS WAS A REASONABLE EXERCISE OF DISCRETIONARY AUTHORITY**

The Trustees have the authority to determine that RPI owed contributions for the period following the recurrence of Medeiros' injury. In his May 6, 2020 letter to the Trustees, RPI's President acknowledged and deferred to the Trustees' authority to interpret the CBA accordingly SUF ¶ 23. The Trustees' determination that RPI was liable for the Medeiros contributions was a reasonable exercise of that authority.

A multiemployer plan may "enforce as written the contribution requirements" found in a collective bargaining agreement. *Bakery and Confectionary Union and Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir.1997).

> Under ERISA, trustees owe a duty to a plan's participants and beneficiaries to assure the financial integrity of the plans by, among other things, "holding employers to the full and prompt fulfillment of their contribution obligations." *See Central Transport, Inc.*, 472 U.S. at 574, 105 S.Ct. 2833, 86 L.Ed.2d 447. In addition to protecting the interests of the plan's participants and beneficiaries, trustees of multiemployer plans also must balance the interests of multiple participating employers (and unions), each of which has an interest in the collection of proper contributions from other employers. *See id.* at 575. Accordingly, as the Supreme Court has recognized, "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries...." *See id.* at 572.

*P-Americas, LLC v. Cent. States Se. & Sw. Area Pension Fund*, No. 13 C 8808, 2014 WL 3858396 at *5 (N.D. Ill. Aug. 5, 2014).

In ERISA cases involving a plan's attempt to collect delinquent contributions from an employer, the appropriate standard of review is determined by analyzing the relevant documents. *See Wisconsin UFCW Unions & Emps. Health Plan v. Woodman's Food Mkt., Inc.*, 348 F. Supp. 2d 1005, 1008 (E.D. Wis. 2004). A court will review a trustee's discretionary authority under the arbitrary and capricious standard if the plan documents grant the trustee such authority. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). The

1st Circuit has applied the arbitrary and capricious standard to an ERISA fund's decision that contributions are due where "the language of the underlying plan reserves discretion to the trustee to interpret the language of the plan and resolve disputes." *See Langone v. USCO Distribution Services, Inc.*, 389 F.Supp.2d 91, 97 (D.Mass.2005) (quoting *Pari–Fasano v. ITT Hartford Life & Accident*, 230 F.3d 415, 418 (1st Cir.2000)). Here, the CBA and Trust Agreement establish the Trustees' authority to make contribution determinations.

Under Article XXI of the CBA, RPI has agreed to ratify all actions taken by the Trustees within the scope of their authority:

> The Employers and Union which are signator hereto ratify the designation of the Employer and the Employee Trustees under such Agreement, and ratify all actions already taken, or to be taken by such Trustees within the scope of their authority.

The scope of the Trustees' authority is defined by the Trust Agreement:

> 4.3 CONSTRUCTION OF AGREEMENT. The Trustees shall have power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be final and binding.

> 13.10 TRUSTEES' DECISIONS FINAL AND BINDING. Subject to this Agreement, all determinations of the Trustees shall be final and binding. The Trustees shall have full authority and discretion to interpret this Agreement and any rules, regulations, policies or provisions thereunder.

These two sections of the Trust Agreement grant the Trustees clear and unambiguous authority to interpret the provisions of the Trust Agreement and make determinations accordingly. Article 5 of the Trust Agreement concerns employer contributions. Specifically, Section 5.2 provides that:

> All contributions shall be made effective as required by the collective bargaining agreement and shall continue to be paid as long as the Employer is obligated pursuant to the collective bargaining agreement with the Union, until he ceases to be an Employer, <u>or otherwise provided by the Trustees within the meaning of this Agreement and Declaration of Trust as hereinafter provided or as provided herein</u>.

The language of the Trust Agreement is sufficiently broad to grant the Trustees discretionary authority in deciding matters related to employer contributions, as well as sufficiently clear and unequivocal to render those decisions final and binding. *See P-Americas, LLC* 2014 WL 3858396 at *5. The Trustees made the determination that RPI owed payments on behalf of Medeiros for the period starting February 4, 2020, because it was a recurrence of the same injury suffered while an employee of RPI. SUF ¶ 18. RPI's President, Bruce Iannuccillo, confirmed the Trustees' discretionary authority in his response to their decision, stating that he "defer[s] to the Board of Trustees to interpret the CBA." SUF ¶ 23. The fact that RPI disagrees with the Trustees' determination does not alter either the Trustees' discretionary authority granted to them under the agreements or the standard of review to be applied under the law.

The Trust Agreement confers discretion on the Trustees to determine the extent to which RPI is obligated to make contributions on behalf of Medeiros, and RPI ratifies that determination by the terms of the CBA. The Trustees reasonably concluded that Medeiros was an employee of RPI at the time of his on-the-job injury and, because of a recurrence of the same injury, that RPI was obligated to make contributions to HSIP under the CBA.

Consequently, HSIP is entitled to judgment as a matter of law.

## IV. THE LANGUAGE OF THE CBA REQUIRES DEFENDANT TO MAKE CONTRIBUTIONS TO THE FUND AFTER RECURRENCE OF INJURY

HSIP maintains that the Trustees' decision should be reviewed under the discretionary arbitrary and capricious standard because the CBA and Trust Agreement grant them the authority to construe the employer contribution provision of the CBA. If, however, the Court finds otherwise, then a *de novo* standard of review will be used to determine RPI's contribution obligations under the CBA. *See Roca v. Westbury Transp. Inc.*, 19 F. Supp. 2d 44, 48 (E.D.N.Y. 1998). Even if this Court finds that the Trustees' interpretation is not entitled to deference, the

Court should interpret the relevant CBA provision to require the Employer liable for the Workers' Compensation injury to submit contributions on the participant's behalf.

The disputed language of the CBA is as follows:

If an employee is injured on the job, the Employer shall continue to pay the required contributions <u>until such employee returns to work</u>, provided however, such contributions shall be forty (40) hours per week and shall not be paid for a period of more than twelve (12) months.

SUF ¶ 8 (emphasis added).

The clear intent of this clause in Article XXI, Section (b) is to ensure that an employee injured on the job is not deprived of their health insurance while they are unable to work. If an employee is unable to work for a period of up to twelve months due to his work-related injury, the employer responsible for the injury should continue to pay the required contributions "until such employee returns to work."

Admittedly, the provision is broad and does not explicitly address what occurs if an employee suffers a recurrence or aggravation of his work-related injury while working for an employer other than the one liable for the injury. However, there are two choices for who should be liable to ensure the injured worker maintains his health insurance coverage: (1) the employer who has workers' compensation liability for the underlying injury, or (2) the new employer who has no liability for the injury. The Trustees' decision to place the duty on the liable employer is a better interpretation of the CBA for two reasons: First, the interpretation sets a clear-cut rule that is easy to understand: if any employer is liable for the work-related injury, it is liable under Article XXI to make contributions. This prevents the confusion of having one employer responsible for workers' compensation benefits, and one responsible for contributions to the Fund. Second, unless the second employer happens to both be a contributing employer *and* party to a CBA requiring the payment of contributions during a work-related incapacity, the Fund would have no way of

enforcing the contribution requirements. That would leave the injured worker without the benefit of health insurance. Thus, an alternative interpretation would be unreasonable, because it could lead to inconsistent application of the section for different companies, as well as expend time and resources of the Fund and signatory employers while determining who is responsible for the contributions of an injured employee.

Further, the CBA is a multi-employer agreement, which means that many other employers are subject to the same terms of the CBA. In order to ensure proper administration of the Fund, the Trustees must be able to enforce a consistent interpretation of the contribution provisions that apply uniformly to all signatory companies. The Fund's interpretation would not only apply to RPI in this instance, but to all employers subject to the terms of the CBA. For example, if an employee is injured while working for a different signatory employer, but the injury is a recurrence of an injury suffered while on the job at RPI, then the second employer could also claim that it is not responsible for the contributions. This would create a scenario where each employer could argue that it was not responsible for the contribution if they were allowed to provide their own interpretation of the Fund's rules. Applying the Trustees' reasonable interpretation of the on-the-job injury provision results in predictable and efficient administration of the Fund.

It is undisputed that Medeiros was an employee of RPI at the time he suffered a knee injury while on the job. SUF ¶ 14. RPI argues that because Medeiros was no longer an employee of RPI at the time of the recurrence of his injury that it is not obligated to pay contributions to HSIP on his behalf. SUF ¶¶ 23 and 24. However, the CBA does not state that an employee who is injured on the job must continue to be an employee for the duration of the contribution period, it only requires that the individual is an employee at the time of the injury. The CBA requires that the employer continue to pay contributions to the Fund "until such employee returns to work." The

term "such employee" in this context refers to "an employee [who] is injured on the job." Here, employment by RPI is only a condition precedent concerning when and under what circumstances the injury happened. It does not specify that the injured person must return to work for the employer. Thus, RPI's contribution obligations are tied to the injury, not the individual's continued employment with the company.

Further, the fact that Medeiros was no longer an employee of RPI is immaterial to whether RPI is liable for the contributions during his period of disability. Article XXI(d) of the CBA requires a signatory employer, including RPI, to make contributions on behalf of employees who have been laid off during the winter months. SUF ¶ 9. The provision does not require that the workers are rehired in the future, so there are other instances contemplated by the CBA where an employer is responsible for making contributions to an individual who is no longer an employee.

Taken as a whole, the CBA requires that the employer make contributions for the duration of disability resulting from an employee's on-the-job injury (with a cap of 12 months). Medeiros was an employee of RPI at the time of the original injury in August 2019 and was unable to work. SUF ¶¶ 14-15. He then returned to work on December 31, 2019, albeit for a different employer, at which point RPI was not required to remit contributions to HSIP. SUF ¶¶ 16-17. Approximately two months later, Medeiros suffered a recurrence of the injury that occurred while he was an employee of RPI and was again rendered unable to work. SUF ¶ 18. The fact that it was a recurrence of the same injury was confirmed by RPI's own insurance carrier, Beacon Mutual Insurance Company, when it classified the injury as such upon reinstatement of Medeiros' workers' compensation benefits. SUF ¶ 19. Therefore, RPI was required to continue making contributions until either Medeiros returned to work, regardless of the employer, or it made a full year of contributions.

Under either standard of review, RPI is required to pay contributions to HSIP for Medeiros' second period of incapacity and it failed to do so. Thus, HSIP should be entitled to summary judgment as a matter of law.

## V.    DEFENDANTS OWE LOCAL 251 HSIP UNPAID CONTRIBUTIONS AND STATUTORY DAMAGES.

In an action where it is determined that the employer has failed to make the agreed to contributions, certain remedies are mandatory under ERISA. *See Laborers Health & Welfare Tr. Fund for N. California v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 547, 108 S. Ct. 830, 835 (1988). If a plan fiduciary is successful in its action to enforce Section 1145 against a delinquent employer, 29 U.S.C. § 1132(g)(2) mandates that the court shall award the plan:

(A)    the unpaid contributions,
(B)    the interest on the unpaid contributions,
(C)    an amount equal to the greater of --
      (i)    interest on unpaid contributions, or
      (ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentages as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D)    reasonable attorney's fees and the cost of action, to be paid by the defendant, and
(E)    such other legal or equitable relief as the Court deems appropriate.

*See Plasterers' and Cement Masons' Local 40 Pension Fund v. Capital Curbing Corp.*, 2010 WL 1424722 at *3 (D.R.I. 2010).

Section 1132(g)(2) awards mandatory relief. There is no discretion to be exercised in determining what relief is to be awarded.

## A.    Unpaid contributions

The total amount of unpaid contributions currently owed to the Fund by RPI is $23,651.18. The Fund's calculations as to the number of hours worked and totals owed are based on full-time disability of forty (40) hours per week. The rates are determined by each CBA and are therefore

18

not in dispute. Defendant's mere assertions that it disagrees with the Trustees' determination is not sufficient to defeat Plaintiffs' Motion for Summary Judgment. "The nonmovant is required to go beyond the pleadings and conclusory statements, and support his contentions with proper documentary evidence." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Therefore, HSIP is entitled to $23,651.18 in unpaid contributions.

**B.    Interest**

Plaintiffs are entitled to $8,657.88 in interest. SUF ¶ 34. Pursuant to section 1132, the Court is specifically directed to apply either the interest rate provided within the benefit plan, or, if none is so prescribed, the applicable rate under 26 U.S.C. § 6621. *See Plasterers' and Cement Masons' Local 40 Pension Fund v. Capital Curbing Corp.*, 2010 WL 1424722 at *4 (D.R.I. 2010). The Delinquency Policy provides that interest shall be charged at a monthly rate of 1.5% of unpaid contributions, or one hundred dollars ($100), whichever is greater. SUF ¶32. Accordingly, the interest owed is $8,657.88.

**C.    Liquidated Damages or Double Interest**

Pursuant to 29 U.S.C. § 1132(g)(2)(C), Plaintiffs are entitled to an additional amount equal to the greater of 1) interest on the unpaid contributions or 2) liquidated damages provided under the plan, not to exceed 20%. *See id*. The interest on the unpaid contributions is $8,657.88. In addition to interest, the Delinquency Policy provides for liquidated damages of twenty percent (20%) of the delinquent contributions, which is $4,730.24. SUF ¶ 34.

Here, the interest on unpaid contributions is greater than the liquidated damages provided for in the Delinquency Policy. Accordingly, Plaintiffs are entitled to additional interest of $8,657.88.

19

**D.    Attorney's Fees and Costs**

An award of attorney's fees is a mandatory remedy under Section 1132. *See Enos v. Union Stone, Inc.*, 732 F.3d 45, 50 (1st Cir. 2013) ("ERISA provides for a mandatory award of attorneys' fees against an employer who defaults on making benefit fund contributions"). HSIP will submit a request for fees and costs at the conclusion of the matter.

**VI.    CONCLUSION**

For all the reasons discussed above, judgment must enter for HSIP as a matter of law as to Count I of the First Amended Complaint, along with all mandatory interest, penalties, attorneys' fees and costs.

Respectfully submitted,

**TEAMSTERS LOCAL 251 HEALTH SERVICES AND INSURANCE PLAN AND TAMMY BEAULDREAULT**,

By their Attorney,

 /s/ Elizabeth Wiens_____
Elizabeth Wiens
Gursky|Wiens, Attorneys at Law, Ltd.
1130 Ten Rod Road, Ste. C-207
North Kingstown, RI  02852
Tel.401.294.4700
Fax 401.294.4702
ewiens@rilaborlaw.com

## CERTIFICATION

The undersigned hereby certifies that on this 11th day of August, 2022, this document was filed electronically and is available for review and downloading via ECF by all registered counsel of record.

*/s/ Janine Durand*

/s/   Janine Durand